## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) ) Chapter 11 |
| Wealshire Rehab, LLC, | ) ) Case No. 24-09110 ) (Subchapter V) |
| Debtor and Debtor in Possession. | ) ) Hon. Donald R. Cassling ) |
| ———————————————— | ) |

**~~THIRD INTERIM~~FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SECURED, SUPERPRIORITY BASIS; (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF[1]**

This matter came before the Court on the emergency motion (the "Initial Motion") [Docket No. 19] of Wealshire Rehab, LLC (the "Debtor") debtor and debtor-in-possession in the above-captioned chapter 11 proceedings (the "Chapter 11 Case"), seeking relief under §§ 361, 363, and 364 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), requesting entry of interim and final orders (i) authorizing the Debtor to obtain postpetition financing on a secured, superpriority basis; (ii) authorizing the Debtor to use cash collateral; (iii) granting adequate protection to prepetition secured parties; (iv) authorizing the Debtor to convert up to $1,240,543.65 of the Prepetition Obligations to Senior DIP Obligations on the terms set forth herein and under the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Superpriority Debtor-In-Possession Credit and Security Agreement.

LP 23823663.3 \ 48654-141468

Senior DIP Facility Documents (the "DIP Roll Up") (iv) modifying the automatic stay, (v) scheduling a final hearing; and (iv) granting related relief. Upon the pleadings and documents filed with the Court in support of the Motion and as supplemented by the first supplement to the Initial Motion (the "First Supplement") [Docket No. 21], the second supplement to the Initial Motion (the "Second Supplement") [Docket No. 30], and the third supplement to the Initial Motion (the "Third Supplement," referred to collectively with the Initial Motion, First Supplement, and Second Supplement, the "Motion") [Docket No. 60] whereby the Debtor is requesting approval of Junior Secured Superpriority Debtor in Possession Credit Facility (the "Junior DIP Facility") by and between the Debtor as borrower and The Asher Group, LLC as lender (the "Junior DIP Lender") evidenced by that certain term sheet entered into on June 25, 2025 (the "Junior DIP Term Sheet") attached to the Third Supplement as Exhibit A; it appearing that appropriate notice of the Motion was provided, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**THE DEBTOR, THE SENIOR DIP LENDER, AND THE JUNIOR DIP LENDER STIPULATE AS FOLLOWS:**

A.      Jurisdiction and Venue. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Case and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Interim Orders. The Court held hearings to consider granting the relief requested in the Initial Motion on an interim basis on June 26 and 27, 2024. Following such hearing, the Court entered an order granting the relief requested in the Initial Motion (as supplemented by the First and Second Supplements) on an interim basis, which order was entered by the Court on

June 27, 2024 [Docket No. 43] (the "First Interim Order"). The Court held a further hearing to

consider granting the relief requested in the Motion on an interim basis on July 2, 2024.

Following such hearing, the Court entered an order granting the relief requested in the Motion on

an interim basis, which order was entered by the Court on July 2, 2024 [Docket No. 66] (the

"Second Interim Order" and together with the First Interim Order, the "Interim Orders"). The

Court held another a further hearing to consider granting the relief requested in the Motion on an

interim, rather than a final, basis on July 16, 2024. Following such hearing, the Court entered an

order granting the relief requested in the Motion on an interim basis, which order was entered by

the Court on July 19, 2024 [Docket No. 85] (the "Third Interim Order," and together with the

First Interim Order and Second Interim Order, the "Interim Orders").

       C.       Committee Formation/Trustee. As of the date of this Third InterimFinal Order, no

request has been made for the appointment of a trustee or examiner. The Court has not ordered

the appointment of a committee of unsecured creditors pursuant to § 1102(a)(3) of the

Bankruptcy Code.

       D.       Subchapter V Trustee. In accordance with § 1183 of the Bankruptcy Code, Robert

P. Handler has been appointed as the subchapter V trustee (the "Subchapter V Trustee") in the

Chapter 11 Case.

       E.       Notice. Sufficient notice of the interim hearings (the "Interim Hearings") and the

Final Hearing (the "Final Hearing") and the relief requested in the Motion has been provided by

the Debtor to all necessary creditors and parties in interest.

       F.       Interim DIP Orders. On June 27, 2024, this Court entered the First Interim Order

approving the Debtors' senior secured postpetition financing facility (the "Senior DIP Facility")

with eCapital Healthcare Corp. (the "Senior DIP Lender" and together with the Junior DIP

3

Lender, the "DIP Lenders"). On July 2, 2024, this Court entered the Second Interim Order

approving the Senior DIP Facility and the Junior DIP Facility. The "DIP Liens," the "DIP

Superpriority Claims," and "DIP Obligations" in the Interim Orders are referred to herein as the

Senior DIP Liens, Senior DIP Superpriority Claims, and Senior DIP Obligations, respectively.

**THE DEBTOR AND THE SENIOR DIP LENDER STIPULATE AS FOLLOWS**

G.    No Control. By virtue of any of the actions taken with respect to, in connection

with, related to, or arising from the Prepetition Credit Documents, eCapital Healthcare Corp.

(the "Senior DIP Lender") does not control the Debtor or its properties or operations, have

authority to determine the manner in which the Debtor's operations are conducted, or are control

persons or insiders of the Debtor.

H.    No Credit Available on More Favorable Terms. The Debtor has been unable to

obtain any of the following on more favorable terms and conditions than those provided in the

~~Third Interim~~Final Order: (a) adequate unsecured credit allowable under Section 503(b)(1) of the

Bankruptcy Code as an administrative expense; (b) credit for money borrowed with priority over

any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the

Bankruptcy Code; or (c) credit for money borrowed secured by a lien on property of the estate

that is not otherwise subject to a lien. The Debtor is unable to obtain credit for borrowed money

without granting the Senior DIP Liens and the Senior DIP Superpriority Claims (each defined

below) to (or for the benefit of) the Senior DIP Lender on the terms and conditions included in

the Senior DIP Facility Documents.

I.    Extension of Financing. The Senior DIP Lender is willing and able to provide

financing to the Debtor in accordance with the *Superpriority Debtor-In-Possession Credit and*

*Security Agreement* attached hereto as **Exhibit A** and all other related documents (collectively,

the "Senior DIP Facility Documents") and subject to (i) the entry of this ~~Third Interim~~Final

Order and (ii) findings by this Court that such financing is essential to the Debtor's estate (and

the continued operations of the Debtor), that the Senior DIP Lender is a good faith financier, and

that the Senior DIP Lender's claims, superpriority claims, security interests and liens and other

protections granted pursuant to and in connection with this ~~Third Interim~~Final Order will not be

affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case

may be, this ~~Third Interim~~Final Order as provided in Section 364(e) of the Bankruptcy Code.

    J.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. The terms and

conditions of the ~~Third Interim~~Final Order and the Senior DIP Facility Documents (including the

DIP Roll Up) are fair, reasonable, and the best available under the circumstances, reflect the

Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent

value and consideration; all payments made under, and transfers or grants of security set forth in,

the Interim Orders, the ~~Third Interim~~Final Order and the Senior DIP Facility Documents are

made, transferred or granted to or for the benefit of the Senior DIP Lender for fair consideration

and reasonably equivalent value, and are granted contemporaneously with the making of the

loans and/or commitments and other financial accommodations secured thereby, including the

obligations incurred by Debtor under this ~~Third Interim~~Final Order and the Senior DIP Facility

Documents (collectively, the "<u>Senior DIP Obligations</u>"); the terms of the Senior DIP Facility

Documents and all other related agreements and documents (collectively, the "<u>Senior DIP</u>

<u>Facility</u>") were negotiated in good faith and at arm's length among the Senior DIP Lender and

the Debtor, and the use of the proceeds to be extended under the Senior DIP Facility will be so

extended in good faith and for valid business purposes and uses, as a consequence of which the

Senior DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy

Code.

K.     <u>Relief Essential; Best Interest of Bankruptcy Estate</u>. The relief provided in the ~~Third Interim~~<u>Final</u> Order is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and property. It is in the best interest of the Debtor's bankruptcy estate that the Debtor be allowed to enter into the Senior DIP Facility Documents, incur the Senior DIP Facility, and grant the liens and claims contemplated herein and under the Senior DIP Facility Documents to the Senior DIP Lender, subject to the terms of the ~~Third Interim~~<u>Final</u> Order.

L.     <u>DIP Roll Up</u>. The DIP Roll Up under the Senior DIP Facility Documents reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties. Absent the DIP Roll Up, the Senior DIP Lender would not have provided the Senior DIP Facility or extended credit to the Debtor. Further, the DIP Roll Up: (i) creates greater availability under the Senior DIP Facility by enabling the Senior DIP Lender to consider Accounts generated prepetition by the Debtor in the determination of the Borrowing Base, and (ii) benefits the Debtor and its estate because it enables the Debtor to obtain urgently needed financing critical to administering this Chapter 11 Case and funding the Debtor's operations. Because of the floating nature of the Borrowing Base in the Senior DIP Credit Agreement, denial of the DIP Roll Up would have resulted in the Debtor's inability to borrow under the DIP Facility until such time as the Debtor generated new Accounts, which would be impossible to generate absent the capital provided by the Senior DIP Facility.

M.     <u>Debtor's Stipulations</u>. After consultation with its attorneys and financial advisors, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows (paragraphs K(i) through K(vi) below are referred to herein, collectively, as the

6

"Debtor's Stipulations"):

i)   *Prepetition Credit Facility.* Pursuant to that certain Credit and Security Agreement, dated as of May 8, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement," and collectively with the Loan Documents (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Credit Documents"), among (i) the Debtor; and (ii) the Senior DIP Lender; the Senior DIP Lender provided revolving credit and other financial accommodations to the Debtor pursuant to the Prepetition Loan Documents (the "Prepetition Credit Facility").

ii)   *Prepetition Obligations.* The Prepetition Credit Facility provided the Borrowers with, among other things, the Revolving Loan Commitments (as defined in the Prepetition Credit Agreement). As of the date of filing of this Chapter 11 Case (the "Petition Date"), the aggregate principal amount outstanding under the Prepetition Credit Facility was not less than $1,240,543.65 (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor's obligations pursuant to, or secured by, the Prepetition Credit Documents, and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Obligations").

iii)   *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Borrower granted to the Senior DIP Lender, for the benefit of itself, a first priority security interest in and continuing lien on (the "Prepetition Liens") the Prepetition Collateral.

iv)   *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations.* The Debtor acknowledges and agrees that as of the Petition Date (i) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Senior DIP Lender for fair consideration and reasonably equivalent value; (ii) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or permitted by

the Prepetition Credit Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date, the "<u>Permitted Prior Liens</u>"); (iii) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the applicable Prepetition Credit Documents; (iv) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the Debtor and its estate have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Senior DIP Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Credit Facility; (vi) the Debtor waives, discharges, and releases any right to challenge any of the Prepetition Obligations, the priority of the Debtor's obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Obligations, and (vii) the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition Obligations and the claims of the Senior DIP Lender arising under, or secured by, the Prepetition Credit Documents constitute allowed, secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code.

v) *Cash Collateral.* All of the Debtor's cash, including any cash in deposit accounts of the Debtor, wherever located, constitutes Cash Collateral of the Senior DIP Lender.

vi) *Default by the Debtor.* The Debtor acknowledges and stipulates that it is in default of its obligations under the Prepetition Credit Documents, including as a result of the commencement of this Chapter 11 Case, and that an Event of Default has occurred under the Prepetition Credit Documents.

N.   Representations regarding postpetition financing:

i)   *Request for Postpetition Financing.* The Debtor seeks authority to (i) use Cash Collateral on the terms described herein, and (ii) enter into the Senior DIP Credit Agreement on the terms and conditions described herein and in the Senior DIP Facility Documents, to administer its Chapter 11 Case and to fund the Debtor's operations. At the ~~Interim Hearings~~<u>Final Hearing</u> on the Motion, the Debtor received final approval of the Senior DIP Facility and use of Cash Collateral pursuant to the ~~Third Interim~~<u>Final</u>

Order in form and substance acceptable to the Senior DIP Lender. Notice of the Final Hearing and ~~this Third Interim~~Final Order will be provided in accordance with this ~~Third Interim~~Final Order.

ii)    *Need for Postpetition Financing and Use of Cash Collateral*. The Debtor has a critical need to use Cash Collateral on ~~an interim~~a final basis and to obtain credit on ~~an interim~~a final basis pursuant to the Senior DIP Facility in order to, among other things, enable the orderly continuation of its operations and administer and preserve the value of its estate. The ability of the Debtor to maintain business relationships with its vendors, suppliers, and customers, to pay its employees, and otherwise finance its operations requires the availability of working capital from the Senior DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, creditors, and parties-in-interest. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the Senior DIP Facility and use of Cash Collateral.

iii)   *No Credit Available on More Favorable Terms*. The Senior DIP Facility is the best source of debtor-in-possession financing available to the Debtor. Given its current financial condition, financing arrangements, and capital structure, the Debtor has been and continues to be unable to obtain financing from sources other than the Senior DIP Lender on terms more favorable than the Senior DIP Facility. The Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor has also been unable to obtain: (i) unsecured credit solely having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (ii) credit secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (iii) credit secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.

iv)    *Use of proceeds of the Senior DIP Facility*. As a condition to entry into the Senior DIP Credit Agreement, the extension of credit under the Senior DIP Facility and the authorization to use Cash Collateral, the Senior DIP Lender requires, and the Debtor has agreed, that proceeds of the Senior DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the ~~Third Interim~~Final Order and the Senior DIP Facility Documents and in accordance with the Budget attached hereto as **Exhibit B** (as the same may be modified from time to time consistent with the terms of the ~~Third Interim~~Final Order, the Senior DIP Facility Documents and subject to such variances as permitted in the Senior DIP Credit Agreement).

v)   *Application of Proceeds of Collateral.* As a condition to entry into the Senior DIP Credit Agreement, the extension of credit under the Senior DIP Facility, and authorization to use Cash Collateral, the Debtor and the Senior DIP Lender have agreed that as of and commencing on the date of the Final Hearing, the Debtor shall apply the proceeds of DIP Collateral in accordance with the ~~Third Interim~~Final Order and the Budget.

vi)   *Roll up of Prepetition Obligations into Obligations.* The Senior DIP Lender would not otherwise consent to the use of its Cash Collateral, and the Senior DIP Lender would not be willing to provide the Senior DIP Facility or extend credit to the Debtor thereunder without the inclusion of the DIP Roll Up in the Senior DIP Obligations. Moreover, the reduction of the Prepetition Obligations upon entry of the Interim Orders and, upon entry of the ~~Third Interim~~Final Order, the roll-up of all outstanding Prepetition Obligations into Senior DIP Obligations will enable the Debtor to obtain urgently needed financing that they need to administer this Chapter 11 Case and fund its operations. Moreover, the conversion and "roll-up" of all outstanding Prepetition Obligations into Senior DIP Obligations will create availability under the Senior DIP Facility and will result in interest savings to the Debtor and its estate.

vii)   *Certain Conditions to Senior DIP Facility.* The Senior DIP Lender's willingness to make the Senior DIP Loan is conditioned upon, among other things: (i) the Debtor obtaining Court approval to enter into the Senior DIP Facility Documents and to incur all of the respective obligations thereunder, and to confer upon the Senior DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by the ~~Third Interim~~Final Order; (ii) the provision of adequate protection of the Senior DIP Lender's interests in the Prepetition Collateral pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, and (iii) the granting of continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in the DIP Collateral (as defined below) to the Senior DIP Lender, as security for the prompt payment of the Senior DIP Facility and all other obligations of the Debtor under the Senior DIP Facility Documents.

O.   <u>Sections 506(c) and 552(b)</u>. In light of the Senior DIP Lender's agreement that its liens and superpriority claims shall be subject to the Carve-Out, (a) the Senior DIP Lender is entitled to a waiver of any "equities of the case" exception under Section 552(b) of the Bankruptcy Code, and (b) the Senior DIP Lender is entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

**THE DEBTOR AND THE JUNIOR DIP LENDER STIPULATE AS FOLLOWS**:

P.    <u>No Credit Available on More Favorable Terms</u>. The Debtor has been unable to

obtain any of the following on more favorable terms and conditions than those provided in this

~~Third Interim~~<u>Final</u> Order: (a) adequate unsecured credit allowable under Section 503(b)(1) of the

Bankruptcy Code as an administrative expense; (b) credit for money borrowed with priority over

any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the

Bankruptcy Code; or (c) credit for money borrowed secured by a lien on property of the estate

that is not otherwise subject to a lien. The Debtor is unable to obtain credit for borrowed money

without granting the Junior DIP Liens and the Junior DIP Superpriority Claims (each defined

below) to (or for the benefit of) the Junior DIP Lender on the terms and conditions included in

the Junior DIP Facility Documents.

Q.    <u>Extension of Financing</u>. The Junior DIP Lender is willing and able to provide

financing to the Debtor in accordance with the Junior DIP Term Sheet, and any other related

documents (collectively, the "<u>Junior DIP Facility Documents</u>").

R.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. The terms and

conditions of the ~~Third Interim~~<u>Final</u> Order and the Junior DIP Facility Documents are fair,

reasonable, and the best available under the circumstances, reflect the Debtor's exercise of

prudent business judgment, and are supported by reasonably equivalent value and consideration;

all payments made under, and transfers or grants of security set forth in, the Interim Orders, the

~~Third Interim~~<u>Final</u> Order, and the Junior DIP Facility Documents are made, transferred or

granted to or for the benefit of the Junior DIP Lender for fair consideration and reasonably

equivalent value, and are granted contemporaneously with the making of the loans and/or

commitments and other financial accommodations secured thereby, including the obligations

incurred by Debtor under this ~~Third Interim~~Final Order, the Interim Orders, and the Junior DIP Facility Documents (collectively, the "Junior DIP Obligations"); the terms of the Junior DIP Facility Documents and any other related agreements and documents (collectively, the "Junior DIP Facility") were negotiated in good faith and at arm's length among the Junior DIP Lender and the Debtor, and the use of the proceeds to be extended under the Junior DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the Junior DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

S.    Relief Essential; Best Interest of Bankruptcy Estate. The relief provided in this ~~Third Interim~~Final Order is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and property. It is in the best interest of the Debtor's bankruptcy estate that the Debtor be allowed to enter into the Junior DIP Facility Documents, incur the Junior DIP Facility Obligations, and grant the liens and claims contemplated herein and under the Junior DIP Facility Documents to the Junior DIP Lender, subject to the terms of this ~~Third Interim~~Final Order.

**NOW, THEREFORE**, upon the Motion and the record before this Court with respect to the Motion, including the record made during the Hearings, and good and sufficient cause appearing therefor, **IT IS ORDERED, ADJUDGED, AND DECREED** that:

1.    Motion Granted. The Motion is granted on ~~an interim~~a final basis in accordance with the terms and conditions set forth in the Interim Orders and the ~~Third Interim~~Final Order. Any objections to the Motion with respect to entry of this ~~Third Interim~~Final Order to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2. <u>DIP Facilities</u>.

(a)    The Debtor is expressly and immediately authorized to enter into the Senior DIP Facility Documents and the Junior DIP Facility Documents, to incur the obligations thereunder and to perform in accordance with the Senior DIP Facility and the Junior DIP Facility in accordance with and subject to this ~~Third Interim~~<u>Final</u> Order, the Budget, the Senior DIP Facility Documents and the Junior DIP Facility Documents, to enter into, execute and/or deliver all Senior DIP Facility Documents, the Junior DIP Facility Documents, and all other instruments, certificates, agreements, and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the Debtor under the Senior DIP Facility Documents and the Junior DIP Facility Documents, including the creation and perfection of the Senior DIP Liens described and provided for under the Senior DIP Facility Documents and the Junior DIP Facility Documents. The Debtor is hereby immediately authorized to borrow up to a total available amount of (i) $2,500,000.00 (including the DIP Roll Up) under the Senior DIP Facility (subject to the Borrowing Base (as defined in the Senior DIP Credit Agreement)) and (ii) $500,000.00 under the Junior DIP Facility, which funds shall be used solely as expressly provided in this ~~Third Interim~~<u>Final</u> Order and the Budget. The Senior DIP Facility (including the DIP Roll Up) and the Junior DIP Facility shall respectively (i) be evidenced by the books and records of the Senior DIP Lender, Junior DIP Lender, the Interim Orders, the ~~Third Interim~~<u>Final</u> Order, the Senior DIP Facility Documents, and the Junior DIP Facility Documents; (ii) bear interest and incur fees at the rates set forth in the Senior DIP Facility Documents and Junior DIP Facility Documents, as applicable; (iii) be secured in the manner specified below and under the applicable Senior DIP Facility Documents and Junior DIP Facility Documents; (iv) be payable in accordance with the applicable Senior DIP Facility Documents and Junior DIP Facility

Documents, and (v) otherwise be governed by the terms set forth in the Interim Orders, this ~~Third Interim~~Final Order, the Senior DIP Facility Documents, and the Junior DIP Facility Documents. Upon a written request from the Debtor (for which email shall suffice), the Senior DIP Lender may agree, in its sole and absolute discretion, to provide an over-advance to the Debtor in excess of the Borrowing Base (which over-advance shall not increase the Borrowing Base) and/or to increase the Facility Cap (as defined in the Senior DIP Credit Agreement). Following an agreement by the Senior DIP Lender to provide an increased Facility Cap, the Debtor shall promptly file a notice of such increase with the Court in form and substance reasonably acceptable to the Senior DIP Lender.

(b)    The Debtor shall pay to (i) the Senior DIP Lender principal and interest as such payments come due as provided in the Senior DIP Facility Documents and in accordance with the procedures set forth therein and (ii) subject to the terms and conditions of the Subordination Agreement, the Junior DIP Lender principal and interest at the Maturity Date (as defined in the Junior DIP Loan Term Sheet) and in accordance with the procedures set forth therein. In consideration of the financial accommodations made by the Senior DIP Lender under this ~~Third Interim~~Final Order and the Senior DIP Facility Documents, in accordance with Paragraph 3 of this ~~Third Interim~~Final Order and the Budget, the Debtor is hereby authorized, without further order of this Court and as set forth in the Senior DIP Facility Documents, to pay to the Senior DIP Lender all fees and charges provided for in the Senior DIP Facility Documents.

(c)    Except as otherwise set forth in the Senior DIP Facility Documents or the Junior DIP Facility Documents, respectively, neither the Senior DIP Lender nor the Junior DIP Lender, respectively, shall have any obligation to make any loan or advance under the Senior DIP Facility Documents or the Junior DIP Facility Documents, respectively, unless all of the conditions

precedent to the making of such extensions of credit under the applicable Senior DIP Facility Documents, Junior DIP Facility Documents, and this ~~Third Interim~~Final Order have been satisfied in full or waived in writing by the Senior DIP Lender or the Junior DIP Lender, as applicable, in its sole discretion.

(d)      The Senior DIP Facility Documents or, subject to the terms of the Subordination Agreement, the Junior DIP Facility Documents, as the case may be, may from time to time be amended, modified, or supplemented by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is (i) in accordance with the Senior DIP Facility Documents or the Junior DIP Facility Documents, respectively; (ii) beneficial to the Debtor; and (iii) not prejudicial in any material respect to the rights of third parties; and (b) the amendment, modification or supplement is filed with the Court. Except as otherwise provided in this paragraph, no waiver, modification, or amendment of any of the provisions of any Senior DIP Facility Documents or Junior DIP Facility Documents shall be effective unless set forth in writing, signed on behalf of the Debtor, and with the necessary consents required under and executed in accordance with the Senior DIP Facility Documents or the Junior DIP Facility Documents, respectively, and approved by the Court on notice.

(e)      To the extent that the terms of this ~~Third Interim~~Final Order conflict with the terms of any of the Senior DIP Facility Documents or the Junior DIP Facility Documents, the terms of this ~~Third Interim~~Final Order will control.

3.      <u>Use of Cash Collateral</u>. Subject to the terms and conditions of this ~~Third Interim~~Final Order, the Senior DIP Facility, and the Senior DIP Facility Documents and solely in accordance with the Budget (subject to the variances set forth in the Senior DIP Credit Agreement), the Debtor is authorized to use Cash Collateral until the Termination Date (as

defined in the Senior DIP Credit Agreement). Nothing in this ~~Third Interim~~Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this ~~Third Interim~~Final Order, the Senior DIP Facility, the Senior DIP Facility Documents, and in accordance with the Budget.

4.    Adequate Protection Liens. Pursuant to Sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Prepetition Lenders are entitled to secure, as adequate protection, an amount equal to any diminution in the value of the respective Prepetition Lender's interests in the Prepetition Collateral resulting from (i) the postpetition use, sale or lease of the Prepetition Collateral; (ii) the imposition of the automatic stay; (iii) the priming of the Prepetition Liens on the Prepetition Collateral by the Senior DIP Liens in favor of the Senior DIP Lender, or (iv) the DIP Roll Up granted in the Interim Orders and this ~~Third Interim~~Final Order and the Senior DIP Facility Documents pursuant to Section 364(d) of the Bankruptcy Code. If any such diminution in value occurs, the Prepetition Lenders shall be and hereby are granted (effective upon the date of this ~~Third Interim~~Final Order and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise) valid and perfected, replacement security interests, in the same priority and to the same extent as existed prepetition, in any post-petition collateral, including post-petition generated accounts receivables, solely to the extent of any diminution in the value of such Subordinated Prepetition Lender's interests in the Prepetition Collateral from and after the Petition Date, and in each case subject to the Carve Out (the "Adequate Protection Liens").

(a)    Priority of Adequate Protection Liens. The Adequate Protection Liens shall be subject and subordinate to the payment of the Carve Out and shall otherwise be junior (in order

of priority) to the Senior DIP Liens, the Junior DIP Liens, and the interests of any lessors of equipment to the Debtor. The Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtor's assets.

(b)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Case or any successor cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Case or any successor cases, or upon the dismissal of any of the Chapter 11 Case or successor cases. The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(c)     <u>Adequate Protection Superpriority Claim</u>. Subject and subordinate in each case to the Junior DIP Liens and payment of the Carve Out as set forth in the Interim Orders <u>and this Final Order</u>, solely to the extent of any diminution in value of their respective interests in the Prepetition Collateral from and after the Petition Date resulting from the use, sale or lease thereof, the imposition of the automatic stay, or the priming of the Prepetition Liens in favor of the Senior DIP Lender, Prepetition Lenders are entitled to a superpriority administrative claim to the extent of such diminution in value and the absence of sufficient security to pay such diminution under Section 507 of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>").

(d)     <u>Priority of the Adequate Protection Superpriority Claim</u>. Except as set forth herein, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter

17

arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claim shall be subject and subordinate to the payment of the Junior DIP Loan Obligations and the Carve Out as set forth in the Interim Orders and this Final Order and junior to the DIP Claim, and subject to the lien priorities set forth herein.

5.      DIP Roll Up. Upon the funding of the first Advance (as defined in the Senior DIP Credit Agreement), the Prepetition Obligations were converted into, and have been converted into, Senior DIP Loans and Senior DIP Obligations and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other Senior DIP Loans and Senior DIP Obligations under the Interim Orders and this Final Order and the Senior DIP Facility Documents.

6.      Budget Maintenance. The use of borrowings under the Senior DIP Facility and the Junior DIP Facility, and the use of Cash Collateral, shall be in accordance with the Budget, depicting, on a weekly basis, cash revenues, receipts, expenses, and disbursements, net cash flows, inventory receipts and other items set forth therein, which shall be in form and substance satisfactory to, and approved by, the Senior DIP Lender in its sole and reasonable discretion. The Budget shall be updated by the Debtor (with the consent and/or at the request of the Senior DIP Lender) from time to time in accordance with the DIP Facility Documents. No such updated, modified or supplemented budget shall be effective until approved by the Senior DIP Lender in writing in its sole and absolute discretion, and filed on the docket of this Chapter 11 Case attaching proof of the Senior DIP Lender's written consent to such budget, and once so approved

and filed shall thereafter be deemed the "Budget"; provided that in the event that the Senior DIP Lender and the Debtor cannot agree as to an updated, modified or supplemented budget, before the end of the period covered by the Budget then in effect in accordance with this ~~Third Interim~~Final Order, the Budget (or such updated, modified, or supplemented Budget as may have been subsequently approved by the Senior DIP Lender) shall continue in effect for this Chapter 11 Case, and such disagreement shall give rise to an "Event of Default" under the DIP Credit Agreement and this ~~Third Interim~~Final Order. For the avoidance of doubt, the Senior DIP Lender shall not be required to make any Loan or Advance in an amount which would, in the aggregate, increase outstanding borrowings to an amount in excess of the "Borrowing Base."

7.    <u>Budget Compliance Covenant</u>. The Debtor shall at all times comply with the Budget, subject to the variances set forth in the Senior DIP Credit Agreement. The Debtor shall provide all reports and other information as required in the Senior DIP Credit Agreement to the Senior DIP Lender, the Junior DIP Lender, and the Subchapter V Trustee. The Debtor's failure to comply with the Budget or to provide the reports and other information required in the Senior DIP Credit Agreement shall constitute an Event of Default (as defined herein).

8.    <u>Modification of the Automatic Stay.</u> The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified, subject to paragraph 15 of this ~~Third Interim~~Final Order, but only to the extent necessary to permit the (i) Senior DIP Lender, subject in all respects to the Senior DIP Facility Documents and the Interim Orders and <u>this Final Order and</u> (ii) Junior DIP Lender, subject in all respects to the Junior DIP Facility Documents and ~~this Third~~<u>the</u> Interim <u>Orders and this Final</u> Order, each to perform any act authorized or permitted under or by virtue of the Interim Orders: (i) to implement the (a) Senior DIP Facility authorized by ~~the Interim Orders~~<u>this</u>

Final Order and pursuant to the terms of the Senior DIP Facility Documents and (b) to implement the Junior DIP Facility authorized by this ~~Third Interim~~Final Order and pursuant to the terms of the Junior DIP Facility Documents; (ii) to take any act reasonably necessary to create, validate, evidence, attach, or perfect any (a) Senior DIP Lien, security interest, right, or claim in the DIP Collateral and (b) Junior DIP Lien, security interest, right, or claim in the Junior DIP Collateral, (iii) authorize the Debtor to pay, and the Senior DIP Lender to retain and apply, payments made in accordance with the terms of ~~the Interim Orders~~this Final Order, and (iv) to exercise any remedies to which the (a) Senior DIP Lender is entitled under the Senior DIP Facility Documents including this ~~Third Interim~~Final Order and (b) Junior DIP Lender is entitled under the Junior DIP Facility Documents including this ~~Third Interim~~Final Order.

9.      _Senior DIP Lender's Fees and Expenses_. Without duplication of amounts required to be paid pursuant to the Senior DIP Facility Documents, upon entry of the ~~Interim Orders~~Final Order, the Debtor shall pay in cash all fees, expenses, and disbursements payable to the Senior DIP Lender as provided for in the Senior DIP Facility Documents. The Debtor shall pay, upon demand, all other reasonable and documented fees, costs, expenses and other amounts payable under the terms of the Senior DIP Facility Documents and this ~~Third Interim~~Final Order and all other reasonable and documented fees and out-of-pocket costs and expenses of the Senior DIP Lender in accordance with the terms of the Senior DIP Facility Documents and this ~~Third Interim~~Final Order, including, without limitation, all reasonable and documented fees and out-of-pocket costs and expenses of legal counsel to the Senior DIP Lender (the "DIP Professional Fees and Expenses"), subject to receiving a written summary invoice therefor. None of such fees, costs, expenses or other amounts shall be subject to further application to or approval of this Court, and shall not be subject to allowance or review by this Court or subject to

the U.S. Trustee's fee guidelines, and no attorney or advisor to the Senior DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court; *provided, however*, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee and the Subchapter V Trustee (together with the Debtor, the "Review Parties"), provided further, however, that such invoices may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtor shall pay such invoices within four (4) business days following the expiration of the Review Period. If an objection is received within the Review Period, the Debtor shall promptly pay the undisputed amount of the invoice within four (4) business days, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection. All such unpaid fees, costs, expenses and other amounts owed or payable to the Senior DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the Senior DIP Obligations under the

Senior DIP Facility Documents and the ~~Interim Orders~~Final Order. For the avoidance of doubt, as set forth in the Senior DIP Facility Documents, the DIP Professionals' Fees and Expenses must first be paid from funds held by the Senior DIP Lender's counsel.

    (a)    Notwithstanding anything contained in this ~~Third Interim~~Final Order to the contrary, any and all payments, premiums, fees, costs, expenses, and other amounts paid at any time by any of the Debtor to the (i) Senior DIP Lender pursuant to the requirements of ~~the Interim Orders~~this Final Order or the Senior DIP Facility Documents (ii) Junior DIP Lender pursuant to the requirements of this ~~Third Interim~~Final Order or the Junior DIP Facility Documents shall in each case be non-refundable and irrevocable, are hereby approved, and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind or nature whatsoever, including, without limitation, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, or recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non- bankruptcy law or otherwise, by any person or entity (subject, solely in the case of the DIP Professional Fees and Expenses, to paragraph 8 of this ~~Third Interim~~Final Order)

    10.    Senior DIP Superpriority Claims.

    (a)    Subject and subordinate to payment of the Carve Out as set forth in the Interim Orders and this Final Order, the Senior DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in the Chapter 11 Case and any successor cases (collectively, the "Senior DIP Superpriority Claims")

for all Senior DIP Obligations. Except as set forth herein, the Senior DIP Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of the Debtor other than payment of the Carve Out, including without limitation any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Chapter 11 Case and any successor cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Senior DIP Superpriority Claims.

(b)     Subject and subordinate to payment of the Senior DIP Superpriority Claims and the Carve Out as set forth in this ~~Third Interim~~Final Order, the Junior DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in the Chapter 11 Case and any successor cases (collectively, the "Junior DIP Superpriority Claims") for all Junior DIP Obligations. Except as set forth herein, the Junior DIP Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of the Debtor other than payment of the Senior DIP Superpriority Claims and the Carve Out, including without limitation any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Chapter 11 Case and any successor cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy

Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Junior DIP Superpriority Claims.

11.     <u>Senior DIP Liens</u>.

(a)     As security for the full and timely payment of the Senior DIP Facility, the Senior DIP Lender is hereby granted, pursuant to Sections 364(c)(2), (c)(3), and (d)(1) of the Bankruptcy Code, a superpriority, senior, perfected priming lien upon the DIP Collateral (defined below), which liens shall constitute valid, enforceable, non-avoidable, fully perfected, and first-priority security interests in and liens upon all DIP Collateral (the "<u>Senior DIP Liens</u>"). The Senior DIP Liens securing the Senior DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the Senior DIP Liens shall be subject to payment of the Carve Out as set forth in the ~~Third Interim~~<u>Final</u> Order. Other than as set forth herein or in the Senior DIP Facility Documents and this ~~Third Interim~~<u>Final</u> Order, the Senior DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any successor cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any successor cases, upon the conversion of any of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (or in any other successor case), and/or upon the dismissal of any of the Chapter 11 Case or successor cases. The Senior DIP Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. "<u>DIP</u>

Collateral" shall mean the Debtor's right, title, and interest in and to the following, whether now

owned or hereafter created, acquired or arising and wherever located:

(i)     all Accounts (including health-care insurance receivables and any amounts received on account of governmental programs or grants) and Related Property;

(ii)     all of Debtor's deposit accounts, including the Governmental Deposit Account;

(iii)     all Books and Records, whether or not related to any Collateral;

(iv)     all of Debtor's other personal property and fixtures, including all Goods, Inventory, Equipment, furniture, General Intangibles (including Payment Intangibles and Software), Chattel Paper (whether tangible or electronic), Supporting Obligations, Investment Property, Financial Assets, Documents, Instruments (including any Promissory Notes), Securities, Securities Accounts, contract rights or rights to payment of money, leases, Permits, license agreements, franchise agreements, Commercial Tort Claims, stock in direct and indirect subsidiaries, machinery, cash, Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing), Intellectual Property, copyrights, trademarks, patents, and tradestyles; and

(v)     any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, Proceeds and insurance proceeds of any or all of the foregoing.

(b)     As security for the full and timely payment of the Junior DIP Facility, the Junior

DIP Lender is hereby granted, pursuant to Sections 364(c)(2), (c)(3), and (d)(1) of the

Bankruptcy Code, a superpriority, junior, perfected priming lien upon the DIP Collateral (the

"Junior DIP Collateral"), which collateral is subordinate to the liens of the Senior DIP Lender in

the DIP Collateral), which liens shall constitute valid, enforceable, non-avoidable, fully

perfected, and first-priority security interests in and liens upon all DIP Collateral (the "Junior

DIP Liens"). The Junior DIP Liens securing the Junior DIP Obligations are valid, automatically

perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral

interest, lien, or claim to any of the DIP Collateral, except that the Junior DIP Liens shall be (i)

subordinate to the Senior DIP Lender's Liens in the DIP Collateral and (ii) subject to payment of

the Carve Out as set forth in this ~~Third Interim~~Final Order. Other than as set forth in this ~~Third Interim~~Final Order or in the Junior DIP Facility Documents, the Junior DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any successor cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any successor cases, upon the conversion of any of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (or in any other successor case), and/or upon the dismissal of any of the Chapter 11 Case or successor cases. The Junior DIP Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. Except for the Senior DIP Liens, no lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Junior DIP Liens.

(c)     Except as expressly permitted in the Senior DIP Facility Documents, the Junior DIP Facility Documents or this ~~Third Interim~~Final Order, absent full payment and satisfaction of all Senior DIP Obligations and Junior DIP Obligations, the Debtor shall not (i) grant or impose any liens on the DIP Collateral, or (ii) except as permitted in the Senior DIP Facility Documents or Junior Facility Documents, prime or seek to prime the Senior DIP Liens or the Junior DIP Liens and shall not offer any other parties any lien on the DIP Collateral. In addition, the Debtor shall not incur, create, assume, become, or be liable in any manner with respect to, or permit to exist, any secured indebtedness, except as expressly permitted under the Senior DIP Facility Documents, the Junior DIP Facility Documents, the Budget, and ~~the Interim Orders~~this Final Order.

(d)     Notwithstanding anything herein or in the Senior DIP Facility Documents or the Junior DIP Facility Documents to the contrary, to the extent not prohibited by applicable

non-bankruptcy law, the priming liens granted pursuant to section 364(d)(1) of the Bankruptcy Code in ~~the Interim Orders~~this Final Order shall **not** apply to encumber the FHA Lender Priority Collateral (as defined below) owned by the Debtor. "FHA Lender Priority Collateral" shall mean the collateral granted to Cambridge Realty Capital Ltd. Of Illinois (the "HUD Lender") pursuant to that certain Operator Security Agreement by and between the Debtor and the HUD Lender, but only to the extent such collateral also constitutes FHA Lender Priority Collateral under and as defined in that certain Intercreditor Agreement, by and among eCapital, Debtor, HUD Lender, Lincolnshire Properties, L.P., and Wealshire Master Tenant, LLC, dated as of May 8, 2023 (the "FHA Intercreditor Agreement"), a copy of which is attached as Exhibit A to the Motion. Except as provided in ~~the Interim Orders~~this Final Order, nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of the Senior DIP Lender pursuant to the FHA Intercreditor Agreement.

(e)     Subject to payment of the Carve Out, neither the Senior DIP Liens nor the Junior DIP Liens shall be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to Section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Senior DIP Liens or the Junior DIP Liens.

12.     Carve Out.

(a)     Subject to the terms, conditions and limitations contained in this paragraph 12, but only to the extent and subject to the express exclusions set forth herein, the Senior DIP Liens, the Senior DIP Superpriority Claims, the Junior DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any other liens or claims granted under the Interim Orders and

this Final Order, are all subordinate to the following solely to the extent such amounts are included in the approved Budget (collectively, the "Carve Out"):

(i)     all unpaid fees required to be paid in the Chapter 11 Case to the Clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a)(6);

(ii)    the reasonable and documented unpaid fees, costs, and disbursements of professionals retained by the Debtor in the Chapter 11 Case (the "Debtor's Professionals");

(iii)   the reasonable and documented unpaid fees, costs, and disbursements of the Subchapter V Trustee;

(iv)    the reasonable and documented unpaid fees, costs, and disbursements of the patient care ombudsman (referred to collectively with the Debtor's Professionals and the Subchapter V Trustee, as the "Estate Professionals").

(v)     Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the first (1st) Business Day following delivery by Senior DIP Lender of a Carve Out Trigger Notice, whether by Interim Order, ~~Third  Interim~~Final Order, the Senior DIP Facility Documents or the Junior DIP Facility Documents (the amounts set forth in this clause (iv), the "Post-Carve Out Trigger Notice Cap")

(1)     For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Senior DIP Lender to the Debtor and its counsel, with a copy to the U.S. Trustee, the Junior DIP Lender and the Subchapter V Trustee, which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event stating that the Carve Out Trigger Notice Cap has been invoked. If the Debtor cures the DIP Termination Event giving rise to a Carve Out Trigger Notice in accordance with any applicable cure period under the Senior DIP Facility Documents, such Carve Out Trigger Notice shall no longer be of force and effect.

(b)     Nothing herein, including the inclusion of line items in the Budget for Estate Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtor, or of any other person or shall affect the right

of the Senior DIP Lender to object to the allowance and payment of such fees and expenses.

(c)     The Senior DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Estate Professionals incurred in connection with the Chapter 11 Case. Nothing in ~~the Interim Orders~~<u>this Final Order</u> or otherwise shall be construed to obligate the Senior DIP Lender in any way to pay compensation to or to reimburse expenses of any Estate Professional, or to guarantee that the Debtor has sufficient funds or sufficient availability under the Borrowing Base to pay such compensation or reimbursement.

13.     Notwithstanding anything to the contrary herein, amounts in the Carve Out shall only be in the amount provided for in the Budget and as are allowed by the Bankruptcy Court (after notice and hearing) under sections 327, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals.

14.     <u>Additional Covenants</u>.

(a)     <u>Collateral Covenant</u>. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except in the ordinary course of business and other than as permitted in the Senior DIP Facility Documents or the Junior DIP Facility Documents, without the prior written order of the Bankruptcy Court, after notice and an opportunity for a hearing; any required consent shall not be implied from any other action, inaction or acquiescence by the Senior DIP Lender or the Junior DIP Lender.

(b)     <u>Milestones</u>. The Debtor shall timely comply with the Milestones set forth on the schedule attached hereto as **Exhibit C** (the "<u>DIP Milestones</u>") in each case on or

before the applicable dates set forth thereon (or on or before any later dates approved in writing (for which email shall suffice) by the Senior DIP Lender in its sole and absolute discretion). The failure of the Debtor to timely satisfy any of the DIP Milestones shall, in the absence of a written waiver by the Senior DIP Lender (for which email shall suffice), (i) constitute an Event of Default under the Senior DIP Credit Agreement and ~~the Interim Orders~~this Final; (ii) result in the automatic termination of the Debtor's authority to use Cash Collateral under ~~the Interim Orders~~this Final Order; and (iii) permit the Senior DIP Lender, subject to paragraph 15 of ~~the Interim Orders~~this Final Order, to exercise the rights and remedies provided for in ~~the Interim Orders~~this Final Order and the Senior DIP Facility Documents.

15. <u>Termination of DIP Financing.</u> The Debtor's authorization to use the Senior DIP Facility or the Junior DIP Facility, respectively, shall immediately terminate upon the occurrence of a "Termination Event," which shall mean the earliest to occur of (i) the expiration of four (4) business days (the "<u>Default Notice Period</u>") following the provision of written notice to the Debtor upon the occurrence of an Event of Default (as defined in the Senior DIP Facility Documents) and such Event of Default remains uncured at the expiration of such Default Notice Period unless the Bankruptcy Court determines no such Event of Default has occurred following the filing of a motion or proceeding during such Default Notice Period requesting such a determination; (ii) the occurrence of a Maturity Date as that term is defined in the Senior DIP Facility Documents or the Junior DIP Facility Documents, and (iii) the date on which this ~~Third Interim~~Final Order is no longer in full force and effect. Neither the Senior DIP Lender nor the Junior DIP Lender shall have ~~no~~any further obligation to fund hereunder if a Chapter 11 trustee is appointed or an examiner with enlarged powers is appointed.

(a)    Upon the occurrence of a Termination Event pursuant to this paragraph 15, the Junior DIP Lender shall immediately fund a cash reserve of $20,000 (the "Relocation Reserve") to address the emergency relocation of the Debtor's residents in the event it becomes necessary.

16.    Release. As of the date of entry of this ~~Third Interim~~Final Order, the Debtor hereby absolutely and unconditionally releases and forever discharges and acquits the Senior DIP Lender and its officers, directors, managers, principals and employees and their respective predecessors, assignors and successors (collectively, the "Released Parties") from any and all obligations and liabilities to the Debtor (and their successors and assigns) and from any and all chapter five claims and causes of action, claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the date of entry of the ~~Third Interim~~Final Order (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, that the Debtor at any time had, now have or may have, or that its successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the ~~Third Interim~~Final Order, in connection with or relating to the DIP Collateral, the Prepetition Obligations, or any of the Released Parties' service as an officer, director, manager or member of the Debtors, whether such Released Claims are matured or unmatured or known or unknown..

17.    Perfection of Liens. This ~~Third Interim~~Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of the Senior DIP Liens and the Junior DIP Liens without the necessity of executing, filing, or recording any mortgage,

security agreement, pledge agreement, financing statement, or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the (i) Senior DIP Liens or to entitle the Senior DIP Lender to the priorities granted herein and (ii) Junior DIP Liens or to entitle the Junior DIP Lender to the priorities granted herein. The Debtor may execute, and the Senior DIP Lender and the Junior DIP Lender, respectively are hereby authorized to execute, file, and/or record mortgages, security agreements, pledge agreements, financing statements, and/or other instruments or documents to evidence the Senior DIP Liens, the Junior DIP Liens, and the Debtor is hereby authorized, promptly upon a demand by the (y) Senior DIP Lender made in accordance with the terms of the Senior DIP Facility Documents or (z) Junior DIP Lender made in accordance with the terms of the Junior DIP Facility Documents, to execute, file, and/or record any such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents as the Senior DIP Lender or Junior DIP Lender may request; provided, however, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the Senior DIP Liens or the Junior DIP Liens, and further, if the Senior DIP Lender or the Junior DIP lender, in their respective sole discretion, shall choose to execute, file, and/or record such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, or otherwise confirm perfection of such Senior DIP Liens and Junior DIP Liens, all such instruments and documents shall be deemed to have been filed or recorded as of the Petition Date. A copy of this ~~Third Interim~~<u>Final</u> Order may, in the discretion of the Senior DIP Lender or the Junior DIP Lender, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, and each and every

federal, state, and local governmental agency, department, or office is hereby directed to accept a copy of this ~~Third Interim~~Final Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this ~~Third Interim~~Final Order, the Senior DIP Facility Documents or the Junior DIP Facility Documents, for filing and recording, and to deem this ~~Third Interim~~Final Order to be in proper form for filing and recording. Notwithstanding the foregoing, pursuant to any applicable law, the Senior DIP Lender and the Junior DIP Lender are hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral, Junior DIP Collateral, Senior DIP Liens and Junior DIP Liens as applicable, without the Debtor's signature in such form and in such offices as the Senior DIP Lender or Junior DIP Lender determines appropriate to perfect the security interests of the (i) Senior DIP Lender under the Senior DIP Facility Documents and ~~the Interim Orders~~this Final Order and (ii) Junior DIP Lender under the Junior DIP Facility Documents and ~~the Interim Orders~~this Final Order, and the Senior DIP Lender and the Junior DIP Lender are authorized to use collateral descriptions such as "all personal property" or "all assets," in each case "whether now owned or hereafter acquired," words of similar import or any other description the Senior DIP Lender or the Junior DIP Lender so choose in any such financing statements; provided that any such description shall not alter the scope of the (y) DIP Collateral as provided in this ~~Third Interim~~Final Order or in the Senior DIP Facility Documents and (z) Junior DIP Collateral as provided in this ~~Third Interim~~Final Order or in the Junior DIP Facility Documents.

18.    <u>Limitation of Liability</u>. With respect to its determination to extend credit under the Senior DIP Facility or in exercising any rights or remedies pursuant to this ~~Third Interim~~Final Order and the Senior DIP Facility Documents, the Senior DIP Lender shall not be deemed to be

in control of the Debtor's operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute).

19.    <u>Collateral Rights</u>. Except as expressly permitted in this ~~Third Interim~~Final Order, the Senior DIP Facility Documents or the Junior DIP Facility Documents, respectively, in the event that any person or entity that holds a lien or security interest in (i) DIP Collateral that is junior or subordinate to the Senior DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, prior to payment in full and in cash and the complete satisfaction of the Senior DIP Facility, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the Senior DIP Lender, and shall immediately turnover such proceeds to the Senior DIP Lender for application in accordance with this ~~Third Interim~~Final Order and the Senior DIP Facility Documents; or (ii) DIP Collateral that is junior or subordinate to the Junior DIP Liens in such Junior DIP Collateral receives or is paid the proceeds of such Junior DIP Collateral, or receives any other payment with respect thereto from any other source, prior to payment in full and in cash and the complete satisfaction of the Junior DIP Facility, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Junior DIP Collateral in trust for the Junior DIP Lender, and shall immediately turnover such proceeds to the Junior DIP Lender for application in accordance with this ~~Third Interim~~Final Order and the Junior DIP Facility Documents.

20.    <u>Excluded Use of Cash Collateral and Proceeds of DIP Financing</u>. Notwithstanding anything to the contrary in this ~~Third Interim~~<u>Final</u> Order, and irrespective of the Carve Out, in no event shall Cash Collateral, the Carve Out, or the proceeds of any loans, advances, or other funds made available by the Senior DIP Lender or Junior DIP Lender to or for the benefit of the Debtor be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Estate Professional or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Senior DIP Superpriority Claims, the Prepetition Loan Documents, ~~the Interim Orders~~<u>this Final Order</u>, or any liens or security interests granted thereby or with respect thereto, (b) reserved; (c) reserved; (d) incurring indebtedness except as permitted by ~~the Interim Orders~~<u>this Final Order</u>; (e) modifying Senior DIP Lender's rights under any Senior DIP Facility Documents or ~~the Interim Orders~~<u>this Final Order</u> without the Senior DIP Lender's consent in its determination; (f) modifying Junior DIP Lender's rights under any Junior DIP Facility Documents or this ~~Third Interim~~<u>Final</u> Order without the Senior DIP Lender's consent in its determination or the Junior DIP Lender's consent, respectively; (g) reserved; (h) asserting or declaring any of the Senior DIP Facility Documents, Junior DIP Facility Documents or ~~the Interim Orders~~<u>this Final Order</u> to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any DIP Collateral to the extent such sale would breach or violate any law, rule, regulatory requirement.

21.    <u>Limitation of Junior DIP Lender's Rights, Subordination of Junior DIP Lender's Junior DIP Claims, and Effectiveness of the Subordination Agreement</u>.

(a)    Until the Senior DIP Loan Obligations have been indefeasibly paid in full in cash, the Senior DIP Lender shall have the exclusive right to exercise remedies with respect to

the DIP Collateral, and the Junior DIP Lender shall not exercise any remedies with respect to the DIP Collateral. The Junior DIP Lender's right to exercise any remedies under this ~~Third Interim~~Final Order or the Junior DIP Loan Documents are subject in all respects to the Subordination Agreement (as defined below).

(b) Notwithstanding anything herein to the contrary or in the Junior DIP Facility Documents or this ~~Third Interim~~Final Order to the contrary, it is expressly understood and agreed that the Junior DIP Liens and the Junior DIP Superpriority Claims shall be junior and subordinated (including in right of payment) in all respects to the liens and claims (including any adequate protection liens and claims) of the Senior DIP Liens and the Senior DIP Superpriority Claims, including, for the avoidance of doubt, to the payment and enforcement rights of the Senior DIP Lender.

(c) Until such time as the Senior DIP Obligations have been indefeasibly paid in full in cash and all financing agreements between the Debtor and the Senior DIP Lender are terminated, the Junior DIP Lender will not receive any cash payments from the Debtor.

(d) The Debtor, the Senior DIP Lender, and the Junior DIP Lender have entered into that certain Subordination Agreement attached hereto as Exhibit A (the "Subordination Agreement"), which is in full force and effect. The Subordination Agreement becoming unenforceable or ineffective at any time shall be considered an "Event of Default" under the Senior DIP Credit Agreement.

22. Survival of ~~Third Interim~~Final Order. The provisions of this ~~Third Interim~~Final Order and any actions taken pursuant hereto (a) shall survive the entry of any order: (i) confirming any chapter 11 plan in this Chapter 11 Case; (ii) converting the Chapter 11 Case to a successor case, or (iii) dismissing the Chapter 11 Case, and (b) shall continue in full force and

effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this ~~Third Interim~~Final Order shall maintain their priority as provided by this ~~Third Interim~~Final Order and the Interim Orders until (y) all of the Senior DIP Obligations approved hereunder are indefeasibly paid in full and discharged in accordance with the ~~Third Interim~~Final Order and the Senior DIP Facility Documents, and (z) all of the Junior DIP Obligations approved hereunder are indefeasibly paid in full and discharged in accordance with the ~~Third Interim~~Final Order.

23.     <u>Effect of Stipulations on Third Parties</u>.

(a)     *Generally*. The admissions, stipulations, agreements, releases, waivers and other relief set forth in Paragraph K of this ~~Third Interim~~Final Order (collectively, the "<u>Prepetition Stipulations and Other Relief</u>") are and shall be binding on the Debtor upon entry and notice of this ~~Third Interim~~Final Order, and, 45 days following entry of the First Interim Order on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-interest and all of its successors in interest and assigns.

(b)     *Binding Effect*. The Prepetition Stipulations and Other Relief are binding, conclusive, and final on the Debtor upon entry of this ~~Third Interim~~Final Order, and, 60 days following entry of the First Interim Order, on any person, entity, or party in interest in the Chapter 11 Case, and its successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate.

24.     Cash Collection. From and after the date of the entry of this ~~Third Interim~~Final Order, all collections and proceeds of any DIP Collateral or services provided by the Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of the Debtor, or to which Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Documents (or in such other accounts as are designated by the Senior DIP Lender from time to time) (collectively, the "Cash Collection Accounts"), which accounts (except as otherwise set forth in the Senior DIP Credit Agreement) shall be subject to the sole dominion and control of the Senior DIP Lender. Unless otherwise agreed to in writing by the Senior DIP Lender or otherwise provided for herein, the Debtor shall maintain no accounts except those identified in that certain first-day motion governing cash management (as such order may be amended or modified from time to time, the "Cash Management Order"). The Debtor and the financial institutions where the Debtor's Cash Collection Accounts are maintained (including those accounts identified in the Cash Management Order) shall, without offset or deduction, direct funds in such Cash Collection Accounts upon receipt of any direction to that effect from the Senior DIP Lender.

25.     No Third-Party Rights. Except as explicitly provided for herein, the ~~Third Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

26.     Subsequent Reversal or Modification. This ~~Third Interim~~Final Order is entered pursuant to, *inter alia*, Section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the Senior DIP Lender and Junior DIP Lender all protections afforded by Section 364(e) of the Bankruptcy Code. If any or all of the provisions of this ~~Third Interim~~Final Order

are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness, or liability incurred hereunder by the Debtor to the Senior DIP Lender or the Junior DIP Lender, or (ii) the validity and enforceability of any lien, claim, obligation, or priority authorized or created under this ~~Third Interim~~Final Order or pursuant to the Senior DIP Facility Documents or the Junior DIP Facility Documents as of such date. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the Senior DIP Lender or the Junior DIP Lender, prior to written notice being delivered to the Senior DIP Lender and the Junior DIP Lender, of the effective date of such action, shall be governed in all respects by the original provisions of this ~~Third Interim~~Final Order, and the (i) Senior DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the Senior DIP Facility Documents with respect to all such indebtedness, obligations, or liability; and (ii) Junior DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the Junior DIP Facility Documents with respect to all such indebtedness, obligations, or liability.

27.     <u>Right to be Heard; No Waiver</u>. This ~~Third Interim~~Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lenders or any other party in interest may have to bring or be heard on any matter brought before this Court. Notwithstanding any provision of this ~~Third Interim~~Final Order to the contrary, the Senior DIP Lender is deemed to have waived any default or Event of Default existing (or that previously existed), which is known or which reasonably could have been known by the Senior DIP Lender under the Senior DIP Facility Documents as of the date of this ~~Third Interim~~Final Order; including any default or Event of Default based on failure to comply with the Budget on or before the date of entry of this ~~Third Interim~~Final Order.

28.   <u>Binding Effect; Successors and Assigns</u>. Except as otherwise provided in the Senior DIP Facility Documents, the Junior Facility Documents and paragraph 23 of this ~~Third Interim~~Final Order, the provisions of this ~~Third Interim~~Final Order shall be binding upon and inure to the benefit of the Senior DIP Lender, the Junior DIP Lender, the Debtor, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of the Debtor, its estate, or with respect to the property of its estate) whether in this Chapter 11 Case, in any successor case, or upon dismissal of this Chapter 11 Case or successor case; provided, however, that neither the Senior DIP Lender nor the Junior DIP Lender shall have no obligation to extend any financing to, or permit the use of cash collateral, DIP Collateral or Junior DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtor's estate.

29.   <u>No Proof of Claim.</u> The Senior DIP Lender shall not be required to file proofs of claim in this Chapter 11 Case or any successor case in order to maintain its respective claims with respect to the Senior DIP Facility or the Prepetition Obligations, all of which shall be due and payable in accordance with the ~~Third Interim~~Final Order, and the Senior DIP Facility Documents, without the necessity of filing any such proof of claim; the statements of claim in respect of the respective Senior DIP Facility set forth in this ~~Third Interim~~Final Order, together with the evidence accompanying the Motion, and presented at the Hearings, are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

30.   <u>Monitoring of Collateral.</u> The Senior DIP Lender and the Junior DIP Lender and their respective consultants and advisors shall be given reasonable access to the Debtor's books, records, assets, and properties.

31.     <u>Section 506(c) Claims</u>. No costs or expenses of administration which have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lenders or any of their claims, the DIP Collateral, the Prepetition Collateral, or the Junior DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Senior DIP Lender or the Junior DIP Lender, respectively, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

32.     <u>Section 552(b)</u>. The Senior DIP Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Senior DIP Lender, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

33.     <u>DIP Roll Up</u>. The Court ~~approves~~<u>approved</u>, on ~~an interim~~<u>a final</u> basis, a full ~~Roll Up~~<u>Roll-up</u> of all Prepetition Obligations of the Debtor to the Senior DIP Lender upon the entry of the First Interim Order.

34.     <u>Indemnification</u>. The Senior DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the Senior DIP Facility, including in respect of the granting of the Senior DIP Liens and the Adequate Protection Liens, any challenges or objections to the Senior DIP Facility, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, Senior DIP Lender, and, solely in its capacities as Senior DIP Lender or prepetition lender, each of its respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, heirs, predecessors,

successors, and assigns, shall be and hereby are indemnified and held harmless by the Debtor in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, actual fraud, or willful misconduct. Except as provided herein, no exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph, in the Prepetition Credit Documents, or in the Senior DIP Facility Documents, to the Debtor's obligation to indemnify and/or hold harmless the Senior DIP Lender.

35.     Order Effective Immediately. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Third Interim~~Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this ~~Third Interim~~Final Order.

~~36.     Service of this Third Interim Order.~~

~~(a)~~ 36.     Service of this Final Order. Within three (3) business days upon entry of this ~~Third Interim~~Final Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this ~~Third Interim Order and the date and time of the Final Hearing (the "Final Hearing Notice"), to all known creditors and parties in interest~~Final Order on all creditors.

~~(b)     The Final Hearing with respect to the Motion and Interim Orders is scheduled for August 6, 2024, at 10:00 a.m. prevailing Central Time, at which time any party in interest may present any timely filed objection to the entry of the Final Order.~~

Parties must file any objections to the entry of a Final Order no later than August 2, 2024 at 4:00 p.m. prevailing Central Time.

(c) No later than July 31, 2024, at 11:59 p.m. prevailing Central Time, the Debtor must file a proposed form of Final Order, budget, and any modifications, amendments, or supplements, to the Senior DIP Credit Agreement or Junior DIP Term Sheet, and serve a copy of the proposed Final Order via the Court's CM/ECF noticing system.

37. <u>Retention of Jurisdiction.</u> The Bankruptcy Court has and will retain jurisdiction to interpret and enforce this ~~Third Interim~~<u>Final</u> Order according to its terms.

38. <u>Assignability of Junior DIP Lender Rights.</u> The Junior DIP Lender's rights, title, and interest under this ~~Third Interim~~<u>Final</u> Order and the Junior DIP Facility Documents are assignable in whole or in part by the Junior DIP Lender, so long as the Junior DIP Lender makes such assignment to an Eligible Assignee (defined herein). As used in this Order, an "Eligible Assignee," means a person or entity that has been approved in writing (with email by counsel to suffice) by <u>the</u> Junior DIP Lender, the Senior DIP Lender, and Debtor in each such party's sole and absolute discretion.  Any Eligible Assignee who is assigned the Junior DIP Lender's rights, titles, and interests, in accordance with this paragraph, may only receive such rights, titles, and interests following such Eligible Assignee's signing an acknowledgment of the Subordination Agreement and an amendment thereto noting that such Eligible Assignee's rights, titles and interests are subject to the Subordination Agreement pursuant to the terms included therein and which amendment shall be in form and substance acceptable to the Senior DIP Lender.

(a) In the event the Junior DIP Lender assigns some or all of its rights, title, and interest under this ~~Third Interim~~<u>Final</u> Order and the Junior DIP Facility Documents,

the Junior DIP Lender must file notice of such assignment on the docket in this Chapter

11 Case, (i) identifying the assignee; (ii) attaching a copy of any agreement(s) entered

into between the Junior DIP Lender and the assignee evidencing the terms of the

assignment; and (iii) attaching an acknowledgment and amendment to the Subordination

Agreement.

39.    Reserved.

### ### END OF ORDER ###

Order submitted by:
Harold D. Israel
Jack R. O'Connor
Sean P. Williams
**LEVENFELD PEARLSTEIN, LLC**
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone: (312) 346-8380
e-mail: hisrael@lplegal.com
e-mail: joconnor@lplegal.com
e-mail: swilliams@lplegal.com

**EXHIBIT A**

**CREDIT AND SECURITY AGREEMENT**

**EXHIBIT B**

**BUDGET**

**EXHIBIT C**

**MILESTONES**

| | Milestone | Specified Deadline |
|---|---|---|
| 1. | On or before "P" (the "Petition Date") the Debtor shall have filed motions seeking approval of the Interim DIP Order which shall be in form and substance acceptable to the Senior DIP Lender in all respects | June 20, 2024 |
| 2. | The Bankruptcy Court shall have entered (1) the Interim DIP Order and such Interim DIP Order shall be in full force and effect and shall not have been (A) vacated, reversed, or stayed, or (B) amended or modified except as otherwise agreed to in writing by the Senior DIP Lender | June 26, 2024 |
| 3. | Deadline for Debtor to enter into junior debtor in possession financing facility in form and substance reasonably satisfactory to Senior DIP Lender and a motion shall have been filed to approve such financing | July 2, 2024 |
| 4. | The Bankruptcy Court shall have entered: (1) the Final DIP Order, and such Final DIP Order shall be in full force and effect and shall not have been (A) vacated, reversed, or stayed, or (B) amended or modified except as otherwise agreed to in writing by the Senior DIP Lender | July 25, 2024 |
| 5. | A Plan of Reorganization, in form and substance agreed upon by the Senior DIP Lender, shall have been filed | September 18, 2024 |
| 6. | A Plan of Reorganization, in form and substance agreed upon by the Senior DIP Lender, shall have been confirmed pursuant to section 1129 of the Bankruptcy Code | November 1, 2024 |
| 7. | A Plan of Reorganization, in form and substance agreed upon by the Senior DIP Lender, shall have become effective. | November 30, 2024 |

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 7/31/2024 4:01:48 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://lplegal-mobility.imanage.work/ACTIVE/23902195/2 | |
| **Modified DMS:** iw://lplegal-mobility.imanage.work/ACTIVE/23882474/8 | |
| **Changes:** | |
| Add | 152 |
| Delete | 146 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 298 |