# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Wealshire Rehab, LLC, | ) Case No. 24-09110 |
| | ) (Subchapter V) |
| Debtor and Debtor in Possession. | ) |
| | ) Hon. Donald R. Cassling |

## NOTICE OF ASSIGNMENT OF JUNIOR DIP FACILITY

**Please take notice** that pursuant to Paragraph 38 of the *Third Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing on a Secured, Superpriority Basis; (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection To Prepetition Secured Parties; (IV) Modifying The Automatic Stay, And (V) Granting Related Relief* (the Third Interim Order") (Dkt. 85) entered in the above-captioned chapter 11 case (the "Case"), The Asher Group, LLC, in its capacity as Junior DIP Lender,[1] has assigned its rights, title, and interest in the Junior DIP Facility to an Eligible Assignee—GS Capital Funding LLC, a Delaware limited liability company (the "Junior DIP Assignee")—pursuant to the *Assignment and Assumption Agreement*, attached here as **Exhibit A**.

**Please take further notice** that, attached here as **Exhibit B** is a copy of the fully executed *Subordination Agreement* between the Junior DIP Assignee and the Senior DIP Lender.

Date: August 8, 2024

THE ASHER GROUP, LLC

By:   /s/Lawrence M. Benjamin
      One of its attorneys

Lawrence M. Benjamin (ARDC #6196417)
REED SMITH LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
Tel: 312-207-1000
Fax: 312-207-6400
lbenjamin@reedsmith.com

---

[1] Capitalized terms used but not defined in this Notice bear the meanings given to them under the Third Interim Order.

EXHIBIT A

Case 24-09110    Doc 101    Filed 08/08/24    Entered 08/08/24 16:38:56    Desc Main
Document      Page 2 of 17

EXHIBIT A

ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT ("Agreement") is made as of the July 24, 2024, by and between The Asher Group, LLC ("Asher"), an Illinois limited liability company ("Assignor") and GS Capital Funding LLC, a Delaware limited liability company ("Assignee").

WITNESSETH:

WHEREAS, Wealshire Rehab, LLC has filed a petition under Subchapter V of the Chapter 11 of the Bankruptcy Code, presently pending in the United States Bankruptcy Court for the Northern District of Illinois, case no. 24-09110 ("Bankruptcy Court").; and

WHEREAS, Assignor has made that certain Junior DIP loan facility available to Debtor in the current amount of $500,000 in the Bankruptcy Case ("Junior DIP"), on the terms and conditions set forth in that certain Junior DIP Loan Documents (defined hereafter).

WHEREAS, as of July 24, 2024, Assignor has provided and lent Debtor the sum of Fifty-Five Thousand Eight Hundred Thirty Eight and 65/100 ($55,838.65) pursuant to the Junior DIP ("Outstanding Amount").

WHEREAS, Assignee has agreed to assume and perform Assignor's obligations under the Junior DIP and the Junior DIP Loan Documents.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby agree as follows:

1. <u>Transfer of Junior DIP</u>.  To the extent permitted by law, upon the Effective Date (defined hereafter), Assignor hereby assigns, sets over and transfers to Assignee all of its right, title and interest in, to and under the following (collectively, "Junior DIP Loan Documents"):

(a) Junior DIP Term Sheet;

(b) Second Interim Order (I) Authorizing The Debtor To Obtain Postpetition Financing On A Secured, Superpriority Basis; (II) Authorizing The Debtor To Use Cash Collateral; (III) Granting Adequate Protection To Prepetition Secured Parties; (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing And (VI) Granting Related Relief; and

{00261013 3/1188/2}

  (c)  Third Interim Order (I) Authorizing The Debtor To Obtain Postpetition Financing On A Secured, Superpriority Basis; (II) Authorizing The Debtor To Use Cash Collateral; (III) Granting Adequate Protection To Prepetition Secured Parties; (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing And (VI) Granting Related Relief ("Third Interim Order").

  2.  <u>Effective Date</u>.  The provisions of Paragraph 1 above shall be effective as of the date the following conditions are fully satisfied ("Effective Date"):  (a) Assignee has been approved in writing (with email by counsel to suffice) by Junior DIP Lender, the Senior DIP Lender, and Debtor (as such terms are defined in the Third Interim Order); and (b) Assignee has paid to Asher in full the Outstanding Amount plus any monies provided or lent by Assignor to the Debtor under the Junior DIP after July 24, 2024.  If the Effective Date does not occur by July 26, 2024 at 5:00 p.m. CST, this Agreement shall be null and void.

  3.  <u>Assumption</u>.  From and after the Effective Date, Assignee hereby accepts the foregoing assignment and assumes all of Assignor's obligations under the Junior DIP Loan Documents, and shall defend, indemnify and hold Assignor harmless from any claims or damages arising from Assignee's failure to perform its obligations thereunder.

  4.  <u>Miscellaneous</u>.  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns, shall be governed by and construed in accordance with the laws of the State of Illinois and may not be modified or amended in any manner other than by a written agreement signed by the party to be charged therewith.  This Assignment may be executed in counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute but one and the same instrument.  Transmission by fax or email of a signed counterpart, or execution by electronic means shall be deemed the same as delivery of a signed original.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the day and year first above written.

ASSIGNOR:

THE ASHER GROUP, LLC,
an Illinois limited liability company

By: *(DocuSigned by: A Goldberg, 873BD3FDE8CD4CE...)*
Name: A Goldberg
Its: President


ASSIGNEE:

GS CAPITAL FUNDING LLC, a Delaware limited liability company

By: *(DocuSigned by: Dimitry Godin, 056D95F593A1471... <dgodin@gscapfunding.com>)*
Name: Dimitry Godin
Its: Manager

EXHIBIT B

SUBORDINATION AGREEMENT

This SUBORDINATION AGREEMENT (this "Agreement") is entered into as of July 24, 2024, by and between WEALSHIRE REHAB, LLC, an Illinois limited liability company ("Debtor"), GS Capital Funding LLC, a Delaware limited liability company (together with its successors and assigns, "Subordinated DIP Lender"), and eCAPITAL HEALTHCARE CORP., a Delaware corporation (together with its successors and assigns, "Senior DIP Lender" each of Subordinated DIP Lender and Senior DIP Lender, a "Lender").

RECITALS

1. WHEREAS, Debtor and Senior DIP Lender have entered into that certain Superpriority Debtor-in-Possession Credit and Security Agreement, dated as of June 27, 2024 (as may be amended, restated, supplemented or otherwise modified from time to time, the "Senior DIP Credit Agreement"), under which Lender has made or may in the future make loans or extensions of credit to or for Debtor's benefit secured by Debtor's personal property;

2. WHEREAS, the Bankruptcy Court for the Northern District of Illinois, Eastern Division entered into that certain *Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing on a Secured, Superpriority Basis; (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Docket No. 43] which approved the Debtor's entry into the Senior DIP Credit Agreement; that certain *Second Interim Order (I) Authorizing The Debtor To Obtain Postpetition Financing On A Secured, Superpriority Basis; (II) Authorizing The Debtor To Use Cash Collateral; (III) Granting Adequate Protection To Prepetition Secured Parties; (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing And (VI) Granting Related Relief*; that certain *Third Interim Order (I) Authorizing The Debtor To Obtain Postpetition Financing On A Secured, Superpriority Basis; (II) Authorizing The Debtor To Use Cash Collateral; (III) Granting Adequate Protection To Prepetition Secured Parties; (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing And (VI) Granting Related Relief* (collectively, "Interim Financing Orders");

3. WHEREAS, The Asher Group, LLC, an Illinois limited liability company and Debtor have entered into that certain Junior DIP Term Sheet, dated as of June 27, 2024 (together with any agreements between Subordinated DIP Lender, Debtor or any of their affiliates relating thereto, the "Subordinated DIP Loan Documents") on the terms and conditions of that certain $500,000 Junior Secured Superpriority Debtor In Possession Loan Junior DIP Term Sheet, under which Subordinated DIP Lender has made or may in the future make loans or extensions of credit to or for Debtor's benefit secured by Debtor's personal property;

4. WHEREAS, under the Senior DIP Credit Agreement, the Debtor may only incur debt to the extent such debt constitutes "Permitted Indebtedness;"

5. WHEREAS, pursuant to the Senior DIP Credit Agreement, the Senior DIP Lender's consent is required for the Debtor to enter into the Subordinated DIP Loan Documents;

6. WHEREAS, as a condition precedent to the Senior DIP Lender's consent to the consummation of the transactions contemplated by the Subordinated DIP Loan Documents, the Senior DIP Lender required execution and delivery of a Subordinated Agreement by the Subordinated DIP Lender and the Debtor to specify the relative rights and priorities of the Senior DIP Lender under the

Senior DIP Credit Agreement and the Subordinated DIP Lender under the Subordinated DIP Loan Documents;

7. WHEREAS, The Asher Group, LLC has assigned to GS Capital Funding, LLC, and GS Capital Funding, LLC has assumed, the obligations of the Subordinated DIP Loan Documents, and has requested Senior DIP Lender agree to same, and as a condition of such consent, the Senior DIP Lender requires the execution of the this Subordination Agreement.

AGREEMENT

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged and stipulated to by all parties hereto, the parties covenant and agree for the benefit of Senior DIP Lender as set forth below.

1. <u>Definitions</u>. Unless otherwise defined herein, capitalized terms shall have the meanings assigned to such terms in the Senior DIP Credit Agreement.

   a. "<u>Acceptable 363 Sale</u>" means a sale of all or substantially all of the Borrowers' assets pursuant to Section 363 of the Bankruptcy Code, subject to the following conditions: (i) the Senior DIP Lender shall have reviewed and approved in writing, the bidding procedures governing a sale of any portion of the Collateral pursuant to Section 363 of the Bankruptcy Code, any order or proposed order approving the Bidding Procedures, any order or proposed order approving a sale of all or any portion of the Collateral pursuant to Section 363 of the Bankruptcy Code (a "<u>Sale Order</u>"), any motions seeking entry of a Sale Order or approval of the Bidding Procedures, or (ii) the Senior DIP Obligations will be paid in full at the closing of such sale.

   b. "<u>Acceptable Plan</u>" means a plan of reorganization or liquidation for the Chapter 11 Case that (x) provides for the indefeasible payment in full in cash of the Senior DIP Obligations on or prior to the Maturity Date, in exchange for full discharge thereof, on or prior to the effective date of the plan as a condition to the effectiveness thereof or (y) is otherwise approved in writing (with email being sufficient) by the Senior DIP Lender.

   c. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any other court having jurisdiction over the Chapter 11 Case or any proceeding therein from time to time.

   d. "<u>Chapter 11 Case</u>" means the bankruptcy case filed under Chapter 11 of Title 11 of the United States Bankruptcy Code by the Debtor with the Bankruptcy Court, which is being administered under Case No. 24-09110 and any successor cases thereto.

   e. "<u>Collateral</u>" means any real or personal property in which each of the Lenders have a Lien to secure performance under the Senior DIP Credit Agreement or Subordinated DIP Loan Documents, as applicable, and payment of the Senior DIP Obligations or Junior Obligations, as applicable.

   f. "<u>Collateral Actions</u>" means (i) to ask, demand, or sue for, or to pursue, take, or receive from Debtor any Collateral or the proceeds thereof, or (ii) to pursue or prosecute any right or remedy which Subordinated DIP Lender may have as a secured party or otherwise in respect of any of the Collateral.

g.  "Indefeasibly Satisfied" means the receipt of payment in full in cash followed by the passage of a period of over 90 days from such payment in which no challenge to such payment has been made by any person, together with the termination of all further commitments of Lender to Debtor under the Credit Agreement.

h.  "Permitted Junior Payment" means payments in-kind, original issue discount or net funding of accrued interest and fees due on the Subordinated DIP Obligations at the rates set forth in the Subordinated DIP Loan Documents. For the avoidance of doubt, at any time prior to the Senior Indebtedness Termination Date, no such Permitted Junior Payment may be made out of the proceeds of any Collateral and no Permitted Junior Payment may be made out of the proceeds of any Collateral.

i.  "Permitted Subordinated PIK Interest" means payments of interest (including at the default rate, if applicable) on the Subordinated Debt, payable in kind (including by capitalizing such interest as principal) and not in cash due.

j.  "Secured Lender Remedies" means any action which results in the sale, foreclosure, realization upon, or a liquidation of any of the Collateral including, without limitation, the exercise or any of the rights or remedies of a "secured party" under Article 9 of the Uniform Commercial Code, such as, without limitation, the notification of account debtors and shall also include any legal proceeding or action to have any stay applicable to the Collateral lifted in the Chapter 11 Case and any action or proceeding against the Debtor to recover all or any part of the Subordinated DIP Obligations, or take possession of, sell or dispose of any Collateral; provided that the following shall not constitute "Secured Lender Remedies": (i) the taking of any action to protect or preserve the perfection, priority or enforceability of any security interest or lien securing the Subordinated DIP Obligations consistent with the terms of this Agreement and so long as such actions do not affect the Senior DIP Lender's lien on the Collateral; (ii) the execution and delivery of definitive financing documentation with respect to the Junior DIP Facility and the Junior DIP Loans in a form consistent with and substantially similar to the Senior DIP Credit Agreement as in effect on the date hereof, as modified to reflect the nature of the Junior DIP Facility as a second lien financing and the terms of the Junior DIP Term Sheet as in effect on the date hereof; (iii) file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding, or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the Subordinated DIP Lender, including any claims secured by the Collateral, if any; and (iv) vote on any plan of reorganization and make any filings and motions that are, in each case, not in contravention of the provisions of this Agreement, with respect to the Subordinated DIP Obligations and the Collateral.

k.  "Senior DIP Credit Agreement" shall have the meaning assigned to the term in the Recitals.

l.  "Senior DIP Obligations" means all of Debtor's obligations, liabilities and indebtedness of every nature from time to time owed to Senior DIP Lender under the Senior DIP Credit Agreement, including, without limitation, interest, fees, costs, expenses, indemnification obligations, whether primary or secondary, direct or indirect, contingent or fixed, joint or several, matured or unmatured or otherwise, heretofore, now and from time to time hereafter owing, due or payable.

m. "Senior DIP Loan Documents" means the Loan Documents as defined in the Senior DIP Credit Agreement (as in effect on the date hereof).

n. "Senior DIP Obligations" means all Obligations (as defined in the Senior DIP Credit Agreement) and other obligations owing by the Debtor to the Senior DIP Lender, whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several, including but not limited to the indebtedness evidenced by the Senior DIP Credit Agreement, in each case, issued or incurred in connection with, under or pursuant to, the Senior DIP Credit Agreement and the other Loan Documents (as defined in the Senior DIP Credit Agreement), including all interest, fees, costs and expenses of collection, including attorneys fee; and legal expenses, and all renewals, extensions and modifications thereof and any notes issued in whole or partial substitution therefor.

o. "Senior Indebtedness Termination Date" means the date when the Senior DIP Obligations shall have been indefeasibly paid in full in cash and the Senior DIP Credit Agreement shall be irrevocably terminated pursuant to its terms.

p. "Subordinated DIP Loan Documents" shall have the meaning assigned to the term in the Recitals.

q. "Subordinated DIP Obligations" means all of the obligations of the Debtor to the Subordinated DIP Lender as evidenced by or incurred pursuant to the Subordinated DIP Loan Documents, including without limitation principal, interest, fees thereon, and costs and expenses of collection including attorneys' fees and legal expenses.

2. Subordination of Liens on Collateral.

   a. Acknowledgment of Lien. Each Lender agrees and acknowledges that the other Lender has been granted a Lien upon the Collateral.

   b. Priority. Notwithstanding the order or time of attachment, or the order, time or manner of perfection, or the order or time of filing or recordation of any document or instrument, or other method of perfecting a Lien in favor of each Lender in any Collateral and notwithstanding any conflicting terms or conditions which may be contained in any other agreement, until the Senior Indebtedness Termination Date, the Liens upon the Collateral securing the Senior DIP Obligations shall have priority over the Liens upon the Collateral securing the Subordinated DIP Obligations and such Liens securing the Subordinated DIP Obligations are and shall be, in all respects, subject and subordinate to the Liens securing the Senior DIP Obligations to the full extent of the Senior DIP Obligations outstanding from time to time.

   c. No Alteration of Priority. The Lien priorities provided in Section 2(b) of this Agreement shall not be altered or otherwise affected by any amendment, modification, supplement, extension, renewal, restatement or refinancing of the Senior DIP Obligations or the Subordinated DIP Obligations, nor by any action or inaction which Senior DIP Lender or the Subordinated DIP Lender may take or fail to take in respect of the Collateral nor by any order of the Bankruptcy Court.

   d. Perfection. Each Lender shall be solely responsible for perfecting and maintaining the perfection of its respective security interest in the Collateral. The foregoing provisions of this

Agreement are intended solely to govern the respective Lien priorities between the Lenders and shall not impose on the Senior DIP Lender any obligations in respect of the disposition of proceeds of foreclosure on any Collateral which would conflict with prior perfected claims therein in favor of any other Person. Subordinated DIP Lender agrees that it will not contest the validity, perfection, priority or enforceability of the Liens of the Senior DIP Lender in the Collateral and that as between the Lenders, the terms of this Agreement shall govern even if part or all of the Senior DIP Obligations or the Liens of Senior DIP Lender securing payment and performance thereof are avoided, disallowed, set aside or otherwise invalidated in any judicial proceeding or otherwise.

e.  Management of Collateral. Senior DIP Lender shall have the exclusive right to manage, perform and enforce the terms of the Senior DIP Credit Agreement with respect to the Collateral and to exercise and enforce all privileges and rights thereunder according to its discretion and exercise of its business judgment including, without limitation, the exclusive right to take or retake control or possession of the Collateral and to hold, prepare for sale, process, sell, lease, dispose of, or liquidate the Collateral. The Senior DIP Lender shall not have any duty to preserve, protect, care for, insure, take possession of, collect, dispose of, or otherwise realize upon any of the Collateral, and in no event shall the Senior DIP Lender be deemed the agent for the Subordinated DIP Lender with respect to the Collateral. In connection therewith, Subordinated DIP Lender hereby waives any and all rights to affect the method or challenge the appropriateness of any action by Senior DIP Lender.

f.  Sale of Collateral. Only the Senior DIP Lender shall have the right to restrict or permit, or approve or disapprove, the sale, transfer or other disposition of Collateral. Subordinated DIP Lender will, promptly upon the reasonable written request of Senior DIP Lender (but no later than two (2) Business Days thereafter), release or otherwise terminate its Liens upon the Collateral, to the extent such Collateral is sold or otherwise disposed of either by Senior DIP Lender, or Debtor with the consent of Senior DIP Lender, in each case, to the extent that Senior DIP Lender also concurrently releases its Liens on such Collateral, in each case, other than in connection with the Senior Indebtedness Termination Date, provided that any such release by Subordinated DIP Lender shall not extend to or otherwise affect any of the rights, if any, of Subordinated DIP Lender to the proceeds from any such sale, transfer or other disposition of any Collateral. To the extent the Subordinated DIP Lender's consent is required to sell, transfer or dispose of the Collateral, the Subordinated DIP Lender shall promptly, upon the request of the Senior DIP Lender (but no later than two (2) Business Days thereafter), provide its consent to such sale to the same extent as the Senior DIP Lender shall have provided its consent. The Senior DIP Lender agrees that it shall provide prior notice of any sale, transfer or other disposition of Collateral pursuant to this clause (f) in the manner required by the Uniform Commercial Code. In accordance with the provisions of applicable law, the Liens of Subordinated DIP Lender shall automatically attach to any proceeds of any Collateral subject to any such sale, transfer or other disposition to the extent not used to repay Senior DIP Obligations.

g.  Secured Lender Remedies. In no event shall Subordinated DIP Lender exercise any Secured Lender Remedies until the Senior Indebtedness Termination Date.

h.  Notice and Waiver of Marshaling. Subordinated DIP Lender and Senior DIP Lender acknowledge that this Agreement shall constitute notice of their respective interests in the Collateral and each hereby waive any right to compel any marshaling of any of the Collateral.

i.  Prohibition on Contesting Liens. In respect of any Collateral, the Subordinated DIP Lender agrees that it shall not, and hereby waives any right to, directly or indirectly:

    1)     contest, or support any other person in contesting, in any proceeding (including the Chapter 11 Case), the priority, validity, extent, attachment, perfection or enforceability of any Lien of the Senior DIP Lender on such Collateral; or

    2)     demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or similar right which it may have in respect of such Collateral or the Liens of the Senior DIP Lender on such Collateral, except to the extent that such rights are expressly granted in this Agreement.

j.   <u>No New Liens or Guarantees</u>. Until the Senior Indebtedness Termination Date, the Subordinated DIP Lender shall not (i) acquire or hold any Lien on any assets of Debtor securing any Subordinated DIP Obligations which assets are not also subject to the Lien of the Senior DIP Lender under the Senior Loan Documents, subject to the Lien priority set forth herein; or (ii) accept any guarantee, indemnity or any other assurance or form of recourse (collectively, the "<u>Guarantee</u>") against loss by any Person in respect of any or all of the Subordinated DIP Obligations if such Person does not also provide a Guarantee to the Senior DIP Lender in respect of the Senior DIP Obligations on substantially similar terms. If the Subordinated DIP Lender shall (nonetheless and in breach hereof) acquire or hold any Lien on any assets of Debtor securing any Subordinated Obligation or accept any Guarantee which assets are not also subject to the Lien of the Senior DIP Lender under the Senior Loan Documents and/or Senior DIP Lender does not receive a Guarantee on substantially similar terms, then the Subordinated DIP Lender shall, without the need for any further consent and notwithstanding anything to the contrary in any other Junior DIP Loan Document, be deemed to also hold and have held such Lien or Guarantee for the benefit of the Senior DIP Lender as security for the Senior DIP Obligations (subject to the Lien priority and other terms hereof) and shall promptly notify the Senior DIP Lender in writing of the existence of such Lien or Guarantee.

k.   <u>Separate Liens</u>. Subordinated DIP Lender and the Senior DIP Lender hereby agree, and the Debtor hereby acknowledges, that (a) the grants of Liens pursuant to the Senior Loan Documents and the Subordinated DIP Loan Documents constitute separate and distinct grants of Liens; and (b) because of, among other things, their differing rights in the Collateral, the Subordinated DIP Obligations in respect of any Collateral are fundamentally different from the Senior DIP Obligations in respect of such Collateral, and the Subordinated DIP Obligations and the Senior DIP Obligations in respect of any Collateral must be separately classified in the Chapter 11 Case. To further effectuate the intent of the parties as provided in the immediately preceding sentence, if it is held that, in respect of any Collateral, the Subordinated DIP Obligations and the Senior DIP Obligations in respect of the Collateral constitute only one secured claim (rather than separate classes of senior and junior secured claims), then the Subordinated DIP Lender hereby acknowledges and agrees that all Distributions in respect of such Collateral shall be made as if there were separate classes of senior and junior secured claims in respect of such Collateral (with the effect that, to the extent that the aggregate value of such Collateral is sufficient (for this purpose ignoring all claims held by the Subordinated DIP Lender), until the Senior Indebtedness Termination Date, the Senior DIP Lender shall be entitled to receive, in addition to all Distributions received by it in respect of the Senior DIP Obligations, all amounts owing on the Senior DIP Obligations before any Distribution is made in respect of the claims held by the Subordinated DIP Lender). The Subordinated DIP Lender hereby agrees to turn over to the Senior DIP Lender any Distributions otherwise received or receivable by them to the extent necessary to effectuate the intent of this <u>Section 3</u>, even if such turnover has the effect of reducing the claim or recovery of the Subordinated DIP Lender

3. **Restrictions on Subordinated DIP Obligations.** Until the Senior DIP Obligations are Indefeasibly Satisfied, and notwithstanding the terms of the Subordinated DIP Obligations, Debtor and Subordinated DIP Lender agree as follows:

   a. Debtor shall not make, nor shall Subordinated DIP Lender accept, (i) payments on the Subordinated DIP Obligations, other than Permitted Subordinated PIK Interest, or (ii) any payment in respect of the Subordinated DIP Obligations more than ten (10) days in advance of the date it is recited to be due under the terms of the Subordinated DIP Loan Documents;

   b. Until the Senior DIP Obligations are Indefeasibly Satisfied, Subordinated DIP Lender will not take any Collateral Actions, regardless of whether such Collateral Actions relate to Subordinated DIP Obligations or indebtedness, liabilities or obligations which are outside the definition of Subordinated DIP Obligations; and

4. **Payments Held in Trust**. Until such time as the Senior DIP Obligations are Indefeasibly Satisfied, if Subordinated DIP Lender receives any Collateral proceeds or receives any other payment which Subordinated DIP Lender is not permitted to accept under the terms of this Agreement, Subordinated DIP Lender agrees to segregate and hold such payment in trust for the benefit of Senior DIP Lender and agrees to immediately deliver the payment to Senior DIP Lender in precisely the same form received (but with the endorsement of Subordinated DIP Lender where necessary) for application on account of the Senior DIP Obligations, and Subordinated DIP Lender agrees that until so delivered, the payment shall be held in trust for and as property of Senior DIP Lender.

5. **Transactions with Collateral**. Without affecting the rights of any Lender under this Agreement, Subordinated DIP Lender agrees and consents that any Collateral for the Senior DIP Obligations, in whole or in part, may be exchanged, sold or surrendered by Senior DIP Lender for other Collateral as it may deem advisable, and that any balance or balances of funds with Senior DIP Lender at any time outstanding to Debtor's credit may, from time to time, in whole or in part, be surrendered or released by Senior DIP Lender as it may deem advisable. Subordinated DIP Lender hereby waives any rights it may have under applicable law to assert the doctrine of marshaling or to otherwise require Senior DIP Lender to marshal any of Debtor's property for the benefit of Subordinated DIP Lender. Subordinated DIP Lender also hereby waives, to the extent permitted by applicable law, any rights it may have to enjoin or otherwise obtain a judicial or administrative order preventing Senior DIP Lender from taking, or refraining from taking, any action with respect to all or any part of the Collateral. Without limiting the foregoing, Subordinated DIP Lender hereby agrees that until the Senior DIP Obligations are Indefeasibly Satisfied: (i) it has no right to direct or object to the manner in which Senior DIP Lender applies the proceeds of the Collateral resulting from the exercise by Senior DIP Lender of its rights and remedies under the Senior DIP Credit Agreement, and (ii) that Senior DIP Lender has not assumed any obligation to act as the agent for Subordinated DIP Lender with respect to the Collateral.

6. **Subordinated DIP Loan Documents Defaults**. Subordinated DIP Lender hereby confirms that no defaults exist by Debtor under or in respect of any amounts currently owed to Subordinated DIP Lender by Debtor pursuant to the Subordinated DIP Loan Documents, and that Debtor does not owe Subordinated DIP Lender any amounts except pursuant to the Subordinated DIP Loan Documents. Debtor shall, within two (2) business days of its receipt of any default notice of under the Senior DIP Credit Agreement, provide a copy of such notice to Subordinated DIP Lender. Debtor shall, within two (2) business days of its receipt of any default notice under the Subordinated DIP Loan Documents, provide a copy of such notice to Senior DIP Lender.

7. **Modification of Subordinated Debt**. The Subordinated DIP Lender shall not, without the consent of the Senior DIP Lender, (i) amend, restate, supplement, or otherwise modify in any manner the Junior

DIP Term Sheet or (ii) enter into the definitive financing documentation referenced in clause (v) of the defined term "Secured Lender Remedies" inconsistent with the requirements thereof.

8. **Action on Subordinated Debt.** The Subordinated DIP Lender will not exercise, enforce, or take any Secured Lender Remedy available to the Subordinated DIP Lender with respect to any Collateral (including, for the avoidance of doubt, any right to credit bid in any sale pursuant to section 363 of the Bankruptcy Code in the Chapter 11 Case), unless and until the Senior Indebtedness Termination Date has occurred.

9. **Waivers.** The Subordinated DIP Lender agrees that it will not at any time prior to the Senior Indebtedness Termination Date: support a plan of reorganization that is not an Acceptable Plan or object or withhold any required consent to (i) the confirmation of an Acceptable Plan or (ii) the approval of an Updated Budget which Senior DIP Lender has approved in its discretion (provided that such Updated Budget does not result, in the aggregate when taken together with any other updates or amendments made since the most recent Updated Budget was approved by Subordinated DIP Lender, in more than a 15% variance from the most recent Updated Budget approved by the Subordinated DIP Lender) (for the avoidance of doubt, the Subordinated DIP Lender approves the most recent Updated Budget provided by the Borrower, a copy of which is attached hereto as Exhibit A, and acknowledges that this Updated Budget shall remain in effect until a new Updated Budget is approved by Senior DIP Lender and Subordinated DIP Lender to the extent required under the Junior DIP Term Sheet); support a sale that is not an Acceptable 363 Sale or object or withhold any consent to the sale of the Collateral supported by the Senior DIP Lender to the extent such consent is required pursuant to Section 3(f) of this Agreement; object to or otherwise oppose the treatment of the Senior DIP Obligations as senior in priority to the Subordinated DIP Obligations; contest the validity, perfection, priority (as set forth in this Agreement) or enforceability of the Senior DIP Obligations or the Liens and security interests of the Senior DIP Lender in the Collateral; contest, object to or otherwise oppose, in any manner whatsoever, the sale of any Collateral without the prior written consent of the Senior DIP Lender (with email being sufficient); or exercise any right to credit bid for all or any portion of the Collateral, whether in a sale under or pursuant to Section 363 of the Bankruptcy Code, a Chapter 11 plan subject to confirmation under section 1129 of the Bankruptcy Code, a sale or disposition by a Chapter 7 trustee, or otherwise.

10. **Amendments in Writing.** No waiver shall be deemed to have been made by any party to this Agreement of any or all of its rights under this Agreement unless the same shall be in writing and duly signed by its duly authorized officers, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of any party to this Agreement in any other respect at any time. No executory agreement shall be effective to change, modify or discharge, in whole or in part, this Agreement, unless such executory agreement is in writing and duly signed by the duly authorized officers of each party to this Agreement.

11. **Miscellaneous.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois and shall be binding upon the undersigned and the respective successors and assigns of the undersigned. The parties hereby consent to the jurisdiction of the state and federal courts located within the State of New York for any dispute arising out of this Agreement. There are no third-party beneficiaries to this Agreement other than Lender and its successors and assigns. Each of the parties to this Agreement hereby waives any right to have a jury participate in resolving any dispute, whether sounding in contract, tort or otherwise arising out of, connected with or related to or in connection with this Agreement. Instead, any dispute resolved in court will be resolved in a bench trial without a jury. No finding of invalidity of any provision of this Agreement shall affect the continuing validity of all other provisions of this Agreement. This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original. This Agreement shall not be construed against any party by reason of such party having drafted this Agreement.

12. **Notices**. Any notice or other communication required or permitted under this Agreement shall be in writing and personally delivered, mailed by registered or certified mail (return receipt requested and postage prepaid), or sent by prepaid overnight courier service, and addressed to the relevant party at its address set forth below or at such other address as such party may, by written notice, designate as its address for purposes of such notice:

    If to The Asher Group, LLC, at:

    The Asher Group, LLC
    Twelve South Broadway
    Beverly Shores, IN 46301
    Attn: Arnold Goldberg

    With copies to (which
    shall not constitute notice):

    Reed Smith LLP
    10 S. Wacker Dr., Ste. 4000
    Chicago, IL 60606
    Attn: Lawrence Benjamin

    If to the Debtor, at:

    Wealshire Rehab, LLC
    Twelve South Broadway
    Beverly Shores, IN 46301
    Attn: Arnold Goldberg

    With copies to (which
    shall not constitute notice):

    Levenfeld Pearlstein, LLC
    120 S. Riverside Plz., Ste. 1800
    Chicago, IL 60606
    Attn: Harold Israel, Jack O'Connor, Sean Williams

    If to Lender, at:

    eCapital Healthcare Corp.
    20807 Biscayne Blvd, Suite 203
    Aventura, FL 33180
    Attn: Legal Department

    With copies to (which
    shall not constitute notice):

    Foley & Lardner LLP
    321 North Clark Street
    Suite 3000
    Chicago, IL 60654

Attn: Edward Green

If to Subordinated DIP Lender, at:

GS Capital Funding LLC
1051 Perimeter Drive, Suite 670
Schaumburg, IL 60173

With copies to (which
shall not constitute notice):

Jeremy J. Meisel
Gutnicki LLP
4711 Golf Rd., Suite 200
Skokie, IL 60076

[Signature Page Follows]

IN WITNESS WHEREOF, each of the parties has duly executed this Subordination Agreement as of the date first written above.

LENDER:

eCAPITAL HEALTHCARE CORP.,
a Delaware corporation

By: _____
Name: Timothy Peters
Title: Authorized Signatory


SUBORDINATED DIP LENDER:

GS Capital Funding LLC

By: _____
       256D95F59354471...
Name:
Title:


DEBTOR:

WEALSHIRE REHAB, LLC,
an Illinois limited liability company

By: _____
       D520B8A42B7045C...
Name: Arnold Goldberg
Title: Manager

Subordination Agreement, Signature Page